## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### PECOS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **PE:20-CV-00046-DC-DF** |
| | § | |
| **MICHAEL MARC TRAVALINO** | § | |
| **aka "MARK WHITE EAGLE",** | § | |
| *Defendant*. | § | |

### REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

TO THE HONORABLE DAVID COUNTS, U.S. DISTRICT JUDGE:

BEFORE THE COURT is Defendant Michael Marc Travalino's, aka "Mark White Eagle", ("Defendant") Third Amended Motion for Return of Seized Property (hereafter, "Third Amended Motion"). (Doc. 38). This case is before the undersigned United States Magistrate Judge through a standing order of referral pursuant to 28 U.S.C. § 636, and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration, the undersigned **RECOMMENDS** that Defendant's Third Amended Motion be **DENIED**. (Doc. 38).[1] Further, the undersigned **RECOMMENDS** that the Government's Oral Motion for Conversion be **GRANTED**. (Doc. 71).

---

1. Whether a magistrate judge "may directly grant or deny a request for return of property or may only make a recommendation to that effect" is an issue undecided by the United States Court of Appeals for the Fifth Circuit. *See In re Search Warrant Executed on Mar. 22, 2016*, Nos. 4:16-MJ-409, 4:16-MJ-555, 4:16-MJ-556, 2016 U.S. Dist. LEXIS 73026, at *21 n.12, 2016 WL 3002358, at *8 n.12 (S.D. Tex. May 20, 2016), *report and recommendation rejected on other grounds sub nom. In re Three Sealed Search Warrants*, Nos. H-16-MJ-409, H-16-MJ-555, H-16-MJ-556, 2016 U.S. Dist. LEXIS 111838 (S.D. Tex. Aug. 17, 2016). The undersigned believes it most circumspective to issue a Report and Recommendation on the motion as opposed to producing an order outright. *See United States v. Rodriguez*, No. EP-08-CR-1865-PRM, 2011 U.S. Dist. LEXIS 133109, at *7–9, 2011 WL 5854369, at *3 (W.D. Tex. Feb. 18, 2011), *report and recommendation adopted*, No. EP-08-CR-1865-PRM, 2011 U.S. Dist. LEXIS 136106 (W.D. Tex. Apr. 24, 2011) ("This Court, as a Magistrate Court, sits on the [Federal] Rule 41(g) Motion and the Joint Motion, by virtue of the District Court's referral orders. Accordingly, this Court's role is limited to making a Report and Recommendation for the District Court's consideration."); *see also In re Scranton Hous. Auth.*, 487 F. Supp. 2d 530 (M.D. Pa. 2007).

# I. Background

On June 1, 2020, the United States of America brought the instant action against Defendant pursuant to 18 U.S.C. § 1345 and 28 U.S.C. §§ 1331, 1345, alleging that Defendant violated federal mail and wire fraud statutes. (Doc. 1). The Government seeks to enjoin Defendant's alleged involvement in "a predatory mail and wire fraud scheme exploiting the current COVID-19 pandemic." (*Id.* at 1). Specifically, the Government contends "Defendant . . . acting alone or in concert with others, operated the website 'whiteeaglenativeherbs.net,'" from which he "formulated, directed, controlled, had the authority to control, or participated" in the fraudulent scheme. (*Id.* at 3). From this website, the Government claims, Defendant presented himself as a "Medicine Man" and "Shaman" who possessed "formulas that are proven to work and distroy [sic] . . . corona virus." (*Id.*) (internal quotation marks omitted). The Government argues Defendant orchestrated in-person and telephonic orders of his purported coronavirus treatments and medicines. (*Id.* at 4, 7). Defendant, the Government states, also "understood that [a recipient of his products] would be transporting these products outside of Texas." (*Id.* at 5).

According to the Government, the World Health Organization, the United States Centers for Disease Control and Prevention ("CDC"), and the United States Food and Drug Administration ("FDA"), had determined, at the time the Government's complaint was filed, "there are . . . no known or authorized cures for COVID-19." (*Id.* at 2, 9). On May 14, 2020, the Federal Trade Commission ("FTC") and the FDA, through the latter's Center for Drug Evaluation and Research ("CDER"), sent Defendant a "Warning Letter" which "referenced the unapproved and misbranded products related to coronavirus disease 2019 . . . being advertised for sale on his web site." (*Id.* at 5). This Warning Letter purportedly instructed Defendant to "cease the sale of such unapproved and unauthorized products" and to "complete specific steps to correct the violations within 48 hours." (*Id.* at 6). By May 20, 2020, an agent with the FDA confirmed that the relevant products were still being advertised for sale; another agent purchased some products and received delivery of a number of

them on May 27, 2020. (*Id.* at 7). In an apparent response to the Warning Letter, Defendant

purportedly sent an email to the FDA/CDER discussing the products' references to COVID-19. (*Id.*

at 8).

The Government therefore alleges Defendant violated two federal statutes, which have

resulted in financial losses to those who purchase Defendant's products. (*Id.* at 9). The Government

claims Defendant has committed, is committing, and will commit violations of 28 U.S.C. §§ 1341,

1343 "by engaging in and facilitating a scheme and artifice to defraud and obtain money or property

by means of false or fraudulent representations with the intent to defraud, and, in so doing," using the

mail or interstate or foreign wire communications. (*Id.* at 9–10). In contemporaneous motions for a

temporary restraining order and preliminary and permanent injunction, the Government requested the

Court to issue an injunction against Defendant, enjoining Defendant from using

"whiteeaglenativeherbs.net" and from selling, marketing, or distributing any purported cures or

treatments "of disease, including COVID-19." (*Id.* at 10; Docs. 3, 4).

The Government, in an agreed motion with Defendant, sought a joint preliminary injunction

on June 18, 2020. (Doc. 15). The Court granted the motion that same day, enjoining Defendant from

*inter alia* committing wire or mail fraud, conducting business via websites promoting the sale of

products "claiming to cure COVID-19 or other diseases," and doing business for the "diagnosis, cure,

mitigation, treatment or prevention of disease, including COVID-19." (Doc. 16 at 2–3). With the

preliminary injunction still pending, on March 24, 2021, Defendant filed his original Motion for

Return of Seized Property, followed by his first amended motion on April 5, 2021. (*See id.* at 3

(setting the termination of the injunction as requiring "a final judgment or order . . . in this matter");

*see also* Docs. 24, 26). On April 23, 2021, Defendant filed his Second Amended Motion for Return

of Seized Property (hereafter, "Second Amended Motion"). (Doc. 29). This was followed on

December 27, 2021, by the instant Third Amended Motion, seeking the return of several items seized

by law enforcement relating to the purported COVID-19 treatments and cures. (Doc. 38 at 1–2). The

Third Amended Motion is almost entirely identical to the Second Amended Motion in its contents,[2] with the only difference being the Third Amended Motion is accompanied by Defendant's Exhibits A and Exhibit B. (*See generally id.*).

In his motion, Defendant discusses a Search and Seizure Warrant issued on June 2, 2020, which purportedly allowed the Government to seize a number of items from Defendant's possession as "part and parcel of an ongoing criminal investigation" by the FDA. (*Id.* at 1). Defendant claims this seizure was improper, as he "uses the seized items in his gainful employment as a Medicine Man/Shaman for legitimate and lawful purposes in performing holistic and tradition healings for those seeking his services, both Native American and otherwise." (*Id.* at 2). Defendant further argues that since "[t]here have been no seizure and/or forfeiture proceedings in this matter" and no criminal charges have been filed against him, the continued retention of Defendant's products "deprives Defendant of his livelihood and absent good cause . . . the [Government] should be ordered to return said items to Defendant." (*Id.* at 2–3). Defendant submits a number of constitutional and statutory claims, arguing that his actions, even if otherwise prohibited, are entitled to exemptions under the American Indian Religious Freedom Act, 42 U.S.C. § 1996, based upon "the items seized [status as being] used in traditional religious healing ceremonies." (*Id.* at 4). Additional support for his motion lies in the First and Fourth Amendments of the United States Constitution: for the former, he maintains the seizure "infringes on [his] right to conduct free exercise of his religion and by extension, his right to conduct traditional religious healing ceremonies as part of that religion"; and

---

2. Defendant titled the motion "Third Amended Motion . . . For Return of Seized Property in Response to the United States' Response to Defendant's [prior] Motion for Return of Seized Property." (Doc. 38 at 1). As the Government observed concerning the Second Amended Motion, the document "appears to be styled as [both] an amended motion," as well as a "response to the [Government's] response to [Defendant's] motion." (Doc. 30 at 1; *see also* Doc. 29). For ease of considering the arguments presented and to obviate the need to consider a surreply by the Government as a response to Defendant's motion, the undersigned will construe the Third Amended Motion as a new motion and not as a reply to any existing Government response. The Government's Response to the Third Amended Motion, accordingly, is not a surreply, and therefore does not warrant particular leave. (*See* Doc. 78).

for the latter, he contends the search warrant accompanied "no probable cause as the items to be seized were protected under 42 U.S.C. [§] 1996." (*Id.*).

Following the Court's granting of leave, the Government produced a Response on April 29, 2022. (Doc. 78). In its Response, the Government maintains that Defendant in his motion failed to meet the burden of proof of demonstrating that his property should be returned. (*Id.* at 2). Under the customary framework, the Government argues, Defendant's motion fails on the merits. (*Id.* at 4). Furthermore, Defendant's challenges under the American Indian Religious Freedom Act and the United States Constitution are invalid and meritless. (*Id.* at 9–10). Defendant has filed no reply to the Government's Response. Accordingly, this matter is ready for disposition.

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 41(g) provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." *See Akin v. United States*, No. 3:19-cv-02104-M-BT, 2020 U.S. Dist. LEXIS 68793, at *2, 2020 WL 1907856, at *1 (N.D. Tex. Mar. 24, 2020) (citing Fed. R. Crim. P. 41(g)), *report and recommendation adopted*, No 3:19-cv-02104-M-BT, 2020 U.S. Dist. LEXIS 67571, 2020 WL 1905271 (N.D. Tex. Apr. 16, 2020). Although this type of motion is typically filed after a criminal indictment has been issued or during or following criminal proceedings, "[t]he motion can be filed before criminal charges are brought." *United States v. Sims*, 376 F.3d 705, 708 (7th Cir. 2004). When a Federal Rule 41(g) motion is made "by a party against whom no criminal charges have been brought, such a motion is in fact a petition that the . . . [C]ourt invoke its civil equitable jurisdiction." *United States v. Comprehensive Drug Testing, Inc.*, 621 F.2d 1162, 1172 (9th Cir. 2010). In this instance "[w]hen a motion for return of property is made before the filing of [an] indictment, the movant bears the burden of proof." *Sosa-Pintor v. United States*, No. 4:19-CV-033-MAC-CAN, 2019 U.S. Dist. LEXIS 89761, at *4, 2019 WL 2273758, at *2 (E.D. Tex. Apr. 22, 2019), *report and*

*recommendation adopted*, No. 4:19CV33, 2019 U.S. Dist. LEXIS 89310, 2019 WL 2267293 (E.D. Tex. May 24, 2019).

Even if the motion is brought prior to the end of an *ongoing* criminal prosecution, "the burden is [still] on the movant to show that he or she is entitled to the property." *United States v. Oduu*, 564 F. App'x 127, 130 (5th Cir. 2014) (unpublished). The burden only shifts to the Government if the motion is "brought after the criminal proceeding is over" *and* the motion "invokes the Court's general equity jurisdiction under 28 U.S.C. [§] 1331." *Gluck v. United States*, No. 3:19-cv-02518-M-BT, 2020 U.S. Dist. LEXIS 130398, at *3, 2020 WL 4195960, at *1 (N.D. Tex. June 24, 2020) (internal quotation marks omitted), *report and recommendation adopted*, No. 3:19-cv-02518-M-BT, 2020 U.S. Dist. LEXIS 127822, 2020 WL 4192630 (N.D. Tex. July 20, 2020). Further, where "the evidentiary need for such property no longer exists," a "defendant is generally presumed to have a right to the return of any property." *Sosa-Pintor*, 2019 U.S. Dist. LEXIS 89761, at *4, 2019 WL 2273758, at *2 (citing *United States v. Dean*, 100 F.3d 19, 20 (5th Cir. 1996)). Defendant brought his Third Amended Motion prior to the conclusion of an ongoing criminal investigation in which the Government asserts the seized items and materials are required as evidence. (Docs. 38; 78 at 11). Therefore, Defendant possesses the burden of persuasion to show an entitlement to the property at this juncture and is not entitled to the post-evidentiary presumption.

### III. ANALYSIS

**A.  Third Amended Motion**

1.  Federal Rule 41(g) and 28 U.S.C. § 1331

Defendant seeks the return of all of the items seized on June 2, 2020, pursuant to Federal Rule 41(g). (Doc. 38 at 1). These items amount to 105 various articles, materials, and ingredients, including "powders, plastic containers, miscellaneous documents, miscellaneous pills, [and] unmarked boxes," which Defendant classifies as "both herbal related and personal documents [and]

eagle feathers and gourds." (Docs. 38 at 3; 78 at 8). Defendant's Exhibit A lists each item seized by the FDA. (Doc. 38 at 7–12).

"Despite being found in the [Federal] Rules of *Criminal* Procedure, motions for return of property under [Federal] Rule 41(g) are considered independent civil actions when an indictment has not been filed." *United States v. Approximately Two Hundred Twenty-Two (222) Firearms & Firearm Accessories*, No. 3:20-cv-1471-M, 2021 U.S. Dist. LEXIS 87519, at *7, 2021 WL 1851031, at *3 (N.D. Tex. May 6, 2021) (emphasis added), *report and recommendation adopted*, No. 3:20-cv-01471-M, 2022 U.S. Dist. LEXIS 53936, 2022 WL 891231 (N.D. Tex. Mar. 25, 2022). In the Fifth Circuit, in considering motions for the return of property, courts often "look[] to [Federal] Rule 41 to determine whether relief is appropriate . . . under 28 U.S.C. § 1331," the source for the Court's equitable jurisdiction. *United States v. Hedrick*, 648 F. App'x 485, 487 n.1 (5th Cir. 2016) (unpublished) (Dennis, J., dissenting); *see also Ford-Bey v. United States*, No. 19-2039, 2020 U.S. Dist. LEXIS 1583, at *34, 2020 WL 32991, at *11 (D.D.C. Jan. 2, 2020) (confirming that Federal Rule 41(g) "is aimed at providing an avenue for individuals aggrieved by the government's retention of property before and during criminal proceedings"). A court's equitable powers under Federal Rule 41(g) are constrained, however, and the court "may decline to exercise its jurisdiction." *Valdez v. United States*, No. EP-07-CV-396-RPM, 2008 U.S. Dist. LEXIS 131572, at *3, 2008 WL 11409931, at *2 (W.D. Tex. Dec. 5, 2008) (citing *In re Search of L. Off.*, 341 F.3d 404, 409–10 (5th Cir. 2003)).

Courts must consider four factors in determining whether property should be returned pursuant to a pre-indictment motion:

> First, and perhaps foremost, is the question (1) whether the motion for return of property accurately alleges that government agents in seizing the property displayed a callous disregard for the constitutional rights of the taxpayer. Other factors to be considered are: (2) whether the plaintiff has an individual interest in and need for the material whose return he seeks; (3) whether the plaintiff would be irreparably injured by denial of the return of the property; and (4) whether the plaintiff has an adequate remedy at law for the redress of his grievance.

*Moats v. Nat'l Credit Union Admin. Bd.*, No. 7:21-cv-00377, 2021 U.S. Dist. LEXIS 189491, at *3, 2021 WL 4488589, at *2 (S.D. Tex. Oct. 1, 2021) (citing *Richey v. Smith*, 515 F.2d 1239, 1243–44 (5th Cir. 1975)); *see also Harbor Healthcare Sys., L.P. v. United States*, 5 F.4th 593, 598 (5th Cir. 2021) (citation omitted) (per curiam). A court nevertheless should proceed "with caution and restraint" when examining these factors and deciding to exercise jurisdiction. *In re Search of L. Off.*, 341 F.3d at 409 (quotation marks and citations omitted). This analysis is not a specialized test, but rather a benchmark outlined by the equitable concerns traditionally considered "when sitting in equity." *See In re 624 NE 2nd St.*, No. 3:17-mc-00588-AC, 2019 U.S. Dist. LEXIS 239908, at *33–34, 2019 WL 13074679, at *11 (D. Or. July 16, 2019), *report and recommendation adopted sub nom. In re 524 NE 2nd St.*, No. 3:18-mc-00588-AC, 2019 U.S. Dist. LEXIS 239906, 2019 WL 13074678 (D. Or. Oct. 4, 2019). Thus, if these factors do not favor the movant, a court should decline to exercise its equitable jurisdiction. *Moats*, 2021 U.S. Dist. LEXIS 189491, at *2, 2021 WL 4488589, at *1; *see also Lab. Force Partners, Ltd. v. United States*, NO. CIV. S-06-0311 FCD/KJM, 2006 U.S. Dist. LEXIS 29955, at *7, 2006 WL 1328262, at *2 (E.D. Cal. May 15, 2006) (applying similar factors).

The same principles apply, whether under the Court's § 1331 equitable jurisdiction, or its Federal Rule 41(g) mid-prosecution jurisdiction. *Moats*, 2021 U.S. Dist. LEXIS 189491, at *2, 2021 WL 4488589, at *1 ("The applicability of equitable principles is the same whether the present action is viewed as one brought under [Federal Rule 41(g)], or as one premised on the equity jurisdiction of the District Court."). Whether analysis is based upon Federal Rule 41(g)—or its predecessor Federal Rule 41(e)[3]—or "on the general equitable jurisdiction of the federal courts," motions "flowing from the seizure of that property are governed by equitable principles." *Flores v. Goldsmith*, No. 5:02mcl,

---

3. 3A CHARLES ALAN WRIGHT & ARTHUR R. MILLER § 690 (4th ed. 2002) ("From its original adoption in 1944 until 2002, [Federal] Rule 41 covered motions to return property under subdivision (e). In 2002, the motion-to-return provision was re-designated [Federal] Rule 41(g). Courts recognize that case law interpreting former [Federal] Rule 41(e) generally applies to current [Federal] Rule 41(g).").

8

2002 U.S. Dist. LEXIS 21686, at *8, 2002 WL 31422859, at *3 (E.D. Tex. Aug. 14, 2002) (citing *Richey*, 515 F.2d at 1243), *report and recommendation adopted*, No. 5:02mc1, 2002 U.S. Dist. LEXIS 21657 (E.D. Tex. Sept. 12, 2002).

Because Defendant's motion comes during an ongoing criminal investigation, and before any indictment has been issued (Docs. 38 at 1; 78 at 2–3), the undersigned is unable to apply Federal Rule 41(g) *per se* and must treat the motion "as a civil action in equity." *See In re Clubhouse Compound of the Outlaws Motorcycle Club*, No. 3:09-MC-27-J-32PDB, 2017 U.S. Dist. LEXIS 220343, at *54, 2017 WL 8809567, at *17 (M.D. Fla. Oct. 6, 2017) (citing *Richey*, 515 F.2d at 1243), *report and recommendation adopted*, No. 3:09-MC-27-J-32PDB, 2018 U.S. Dist. LEXIS 66735, 2018 WL 1832894 (M.D. Fla. Feb. 5, 2018). Accordingly, the Court's equitable jurisdiction under 28 U.S.C. § 1331 must be invoked. *Cf. Moats*, 2021 U.S. Dist. LEXIS 189491, at *2, 2021 WL 4488589, at *1.

2. Standing and Propriety of the Third Amended Motion

In order to engage in the four-step equitable analysis, a review of the statutory authority under which the Government seized Defendant's property would be insightful. The Government's Complaint for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction (hereafter, "Complaint") requested an injunction under the anti-fraud provisions of 18 U.S.C. §§ 1341, 1343, and 1345. (Doc. 1 at 2). Sections 1341 and 1343 proscribe mail fraud and wire fraud, respectively, while § 1345 provides the Government with the ability to seek a temporary restraining order, a preliminary injunction, and a permanent injunction of such conduct. 18 U.S.C. §§ 1341, 1343, 1345. The Government's Complaint sought an order whereby:

> Defendant, his agents, officers, and employees, and all other persons or entities in active concert or participation with them, are temporarily restrained [and preliminarily and permanently enjoined] from committing wire fraud, as defined by 18 U.S.C. §§ 1341 and 1343, from maintaining and doing business through the use of the domain "whiteeaglenativeherbs.net" and from continuing to sell, market or distribute any product intended for use in the diagnosis, cure, mitigation, treatment or prevention *of disease, including* COVID-19.

9

(Doc. 1 at 10) (emphasis added). Defendant, by joint motion, was enjoined accordingly. (Docs. 15; 16 at 2–3). This preliminary injunction, having not been abrogated, superseded, or modified by "final judgment or order . . . in this matter," is still in effect. (Doc. 16 at 3).

>    i.   Standing: Contraband

The main preliminary question presented by the Court's exercise of its equitable jurisdiction over the items Defendant claims are his property is whether it should "order law enforcement to release the property 'to the rightful owner or his designee.'" *Clubhouse Compound*, 2017 U.S. Dist. LEXIS 220343, at *54, 2017 WL 8809567, at *17 (quoting *Henderson v. United States*, 575 U.S. 622, 626 (2015)). The Government argues the Third Amended Motion should be denied on the ground that Defendant has failed to demonstrate or sufficiently argue he owns a valid possessory interest in the 105 seized items, and that he accordingly lacks the standing to seek the return of said property. (Doc. 78 at 7–8). In a related argument, the Government asserts Defendant's motion has been inadequately proffered because Defendant did not properly identify the items he seeks to return. (Doc. 78 at 8).

For a party to have pre-indictment standing in this Court's equitable jurisdiction under Federal Rule 41(g) or § 1331, Defendant must prove the existence of two elements: (1) the Government possesses the property the return of which the movant is seeking, and (2) the movant established a "lawful entitlement" to the property. *See Bailey v. United States*, 508 F.3d 736, 740 (5th Cir. 2007) ("[T]he government cannot return property it does not possess . . . ."); *Wilson v. United States*, No. 4:17 MJ 407 DDN, 2021 U.S. Dist. LEXIS 200962, at *8, 2021 WL 4847444, at *3–4 (E.D. Mo. Aug. 27, 2021), *report and recommendation adopted sub nom. United States v. Wilson*, No. 4:17 MJ 407 DDN, 2021 U.S. Dist. LEXIS 200110, 2021 WL 4844055 (E.D. Mo. Oct. 18, 2021). If Defendant meets his burden on both elements, the Government must then "establish a legitimate reason" to continue retaining Defendant's property. *Wilson*, 2021 U.S. Dist. LEXIS 200962, at *8, 2021 WL 4847444, at *3. However, the Court's equitable jurisdiction is properly

10

declined where the defendant is demonstrated to "not [be] entitled to lawful possession of the seized property, the property is contraband . . . or the government's need for the property as evidence continues." *United States v. Marks*, No. 2:17-CR-537, 2018 U.S. Dist. LEXIS 6495, at *23, 2018 WL 437574, at *8 (S.D. Tex. Jan. 16, 2018); *see also Industrias Cardoen, Ltda. v. United States*, 983 F.2d 49, 51 n.1 (5th Cir. 1993). Thus, "[i]f the [Government] has a need for the property in an investigation or prosecution, its retention of the property is generally reasonable." *Akin*, 2020 U.S. Dist. LEXIS 68793, at *5, 2020 WL 1907856, at *2 (citing Fed. R. Crim. P. 41 advisory committee's note to 1989 amendment). The undersigned denotes the obvious—the Government possesses the property as seized. The remaining inquiry therefore is one of Defendant's lawful entitlement to the property.

The Government seized the property pursuant to a search and seizure warrant authorized by a magistrate judge issued under Federal Rule 41. (Docs. 38 at 1–2; 78 at 8–9). "Contraband" is defined generally as "[g]oods that are unlawful to import, export, produce, or possess." Black's Law Dictionary (11th ed. 2019). Contraband is generally classified as one of two types: "per se contraband" and "derivative contraband." *Savoy v. United States*, 604 F.3d 929, 934 (6th Cir. 2010) (citing *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 699–700 (1965)). Traditional or per se contraband entails "objects the possession of which, without more, constitutes a crime." *United States v. Farrell*, 606 F.2d 1341, 1344 (D.C. Cir. 1979) (internal citation and quotation marks omitted). Derivative contraband, on the other hand, "includes items 'which are not inherently unlawful but which may become unlawful because of the use to which they are put.'" *Vitrano v. United States*, No. 06 Civ. 6518, 2009 U.S. Dist. LEXIS 32550, at *16, 2009 WL 1011582, at *5 (S.D.N.Y. Apr. 14, 2009) (quoting *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1212 n.13 (10th Cir. 2001)).

In this instance, the items are undisputedly contraband. The mail and wire fraud statutes prohibit, in furtherance of any "scheme or artifice to defraud," acts taken to "sell, dispose of, loan,

exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious . . . article, or anything represented to be or intimated or held out to be such counterfeit or spurious article," as well as the transmission of "any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice." 18 U.S.C. §§ 1341, 1343. The Government characterized the 105 items seized as being items utilized in the furtherance of this scheme, as well as products which were the center of the fraud. (Doc. 1 at 6, 9). Thus, the 105 items would be unlawful to produce and possess if their sale, transmission, supply, or otherwise would subject Defendant to the proscriptions of §§ 1341 and 1343. Defendant has done little to controvert the illegality of the products he allegedly sold on his website. (*See generally* Doc. 38). Therefore, for the purposes of this Report and Recommendations, the undersigned holds that the 105 articles the return of which Defendant seeks, being the primary products and ingredients allegedly involved in Defendant's scheme, are contraband. *See Osamor v. United States*, No. 4:09cv1500, 2010 U.S. Dist. LEXIS 156956, at *18–19, 2010 WL 11668149 at *7 (S.D. Tex. Nov. 5, 2010) (holding that articles connected to certain frauds may be contraband), *report and recommendation adopted*, No. 4:09-1500, 2011 WL 13340485 (S.D. Tex. Sept. 21, 2011).

   It is clear Defendant's business reeks of illegal activity. Possession of the 105 seized items, which the Government maintains mostly entail bogus "medicines" and seemingly legal ingredients, of course, is not expressly circumscribed under the relevant fraud statutes, and is therefore not contraband per se. However, because the items "*may have been used* in furtherance of a crime, the [Government] may hold it as derivative contraband." *United States v. Approximately Two Hundred Twenty-Two (222) Firearms & Firearm Accessories*, No. 3:20-cv-1471-M, 2021 U.S. Dist. LEXIS 87519, at *6, 2021 WL 1851031, at *4 (N.D. Tex. May 6, 2021) (emphasis added), *report and recommendation adopted*, No. 3:20-cv-01471-M, 2022 U.S. Dist. LEXIS 53936, 2022 WL 891231 (N.D. Tex. Mar. 25, 2022). Thus, while the seized items might be lawful to possess in an isolated, private state, Defendant's purported use—the sale of said products in a fraudulent prophylaxis

12

scheme—transforms them into derivative contraband. Defendant has not offered any substantive argument vying for the legality of the scheme in which he is alleged to have participated.

Further, according to the Government, all of the items seized are "evidentiary materials needed for purposes of prosecuting this civil case" as well as "evidence in a[ criminal] investigation." (Doc. 78 at 6). The undersigned agrees. Certainly some of the items seized, such as boxes of "YAWEH," which the Government insists are also utilized in Defendant's product frauds, could reasonably stand as evidence in the Government's ongoing criminal investigation for the same. (Doc. 38 at 3). Moreover, Defendant himself admits the "ongoing investigation" is connected to the "alleged marketing of certain natural herbs and other natural substances . . . by Defendant as a cure for COVID-19." (Doc. 38 at 1). Defendant elsewhere acknowledges some such items were enumerated in the Warning Letter as a problem item, among a list of other substances the FDA sanctioned as "unapproved new drugs sold in violation of [a specific federal statute]." (Doc. 38 at 11, 15). The undersigned is presented with no reason to differentiate between the seized materials and exclude those products not specifically listed in the Warning Letter.[4] (*Id.* at 14–18).

Defendant's conceded intent to continue using the items in furtherance of his purportedly illicit undertaking and failure to demonstrate the superfluous quality of the seizure lead the undersigned to also conclude that the derivative contraband articles "contain still-needed evidence" for the investigation and potential prosecution of the alleged crimes. *Akin v. United States*, No. 3:19-cv-02104-M-BT, 2020 U.S. Dist. LEXIS 68793, at *5, 2020 WL 1907856, at *3 (N.D. Tex. Mar. 24,

---

4. The Third Amended Motion leaves unclear "what specific items . . . [Defendant] seeks to have returned." *Akin v. United States*, No. 3:19-cv-02104-M-BT, 2020 U.S. Dist. LEXIS 68793, at *6, 2020 WL 1907856, at *2 (N.D. Tex. Mar. 24, 2020) (citing Fed. R. Crim. P. 41(g)), *report and recommendation adopted*, No 3:19-cv-02104-M-BT, 2020 U.S. Dist. LEXIS 67571, 2020 WL 1905271 (N.D. Tex. Apr. 16, 2020). Defendant does attempt to characterize the criminal investigation as one relating to "cures for COVID-19." (Doc. 38 at 2). However, the preliminary injunction to which Defendant agreed established a proper scope of products "intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease, *including COVID-19*," without express exception. (Doc. 16 at 2–3) (emphasis added). Thus, neither the Court nor the parties indicated any intent to limit the breadth of the injunction, and thus Defendant was enjoined from the "selling, marketing or distributing" of *any* prophylactic or remedial product, not just those relating to COVID-19. (*Id.* at 3).

2020), *report and recommendation adopted*, No 3:19-cv-02104-M-BT, 2020 U.S. Dist. LEXIS 67571, 2020 WL 1905271 (N.D. Tex. Apr. 16, 2020). With Defendant having not controverted the Government's seizure of any of the 105 items, the Government has an undisputed "need for the property" in its investigation of Defendant's alleged frauds, conceivably to determine whether and how many of the substances are unable to provide medicinal or sanative benefits, and therefore "its retention of the property is generally reasonable." *Id.*, 2020 U.S. Dist. LEXIS 68793, at *5, 2020 WL 1907856, at *2 (citing Fed. R. Crim. P. 41 advisory committee's note to 1989 amendment). Defendant is not entitled to the items' return.

Therefore, the undersigned concludes that the items and materials seized are derivative contraband, and Defendant has failed to meet his burden of showing a lawful entitlement to said property.[5] Accordingly, the undersigned **RECOMMENDS** that the Third Amended Motion be **DENIED** on this ground. (Doc. 38).

ii.   Other Standing Arguments and Propriety of the Motion

The Government makes an additional challenge to Defendant's standing to bring the Third Amended Motion, as well as one relating to the propriety of the motion. (Doc. 78). At the outset, there are two minor issues to discuss. First, with the investigation still pending, Defendant has yet to be "indicted []or charged with any crime," making it unclear whether he can bring such a challenge at this stage. *See United States v. Huggins*, No. 13-CR-00155, 2013 U.S. Dist. LEXIS 59773, at *13, 2013 WL 1728269, at *4 (S.D.N.Y. Mar. 22, 2013) (citing *In re Wiltron Assocs., Ltd.*, 49 F.R.D. 170, 172 (S.D.N.Y. 1970)), *report and recommendation adopted*, No. 13 Cr. 155, 2013 U.S. Dist. LEXIS

---

5. A Federal Rule 41(g) motion can be decided without an evidentiary hearing where "it is apparent that the person seeking return of the property is not lawfully entitled to own or possess the property." *Wilson v. United States*, No. 4:17 MJ 407 DDN, 2021 U.S. Dist. LEXIS 200962, at *9, 2021 WL 4847444, at *4 (E.D. Mo. Aug. 27, 2021), *report and recommendation adopted sub nom. United States v. Wilson*, No. 4:17 MJ 407 DDN, 2021 U.S. Dist. LEXIS 200110, 2021 WL 4844055 (E.D. Mo. Oct. 18, 2021). Because the undersigned finds Defendant is not lawfully entitled to the property seized, as it is contraband, the undersigned also concludes no evidentiary hearing is necessary.

186202, 2013 WL 1736466 (S.D.N.Y. Apr. 11, 2013). In the interests of thoroughness, the undersigned will proceed with the analysis as though Defendant's pre-indictment motion is appropriately filed.

Second, as to the Government's argument pertaining to the need to specifically identify each item, however, the undersigned is not so readily convinced. The Government's assertion that Defendant's identification of the items to be returned as those listed on the post-seizure evidence report implies that a defendant would be required to mark and describe every item he would seek to have returned. (Docs. 38 at 2, 7; 78 at 8). To the contrary, though it is true courts generally necessitate some form of manageable specificity in a § 1331 equitable or Federal Rule 41(g) motion, Defendant's Third Amended Motion makes it clear that he seeks the return of *all* seized items. (Doc. 38 at 2); *Mizell v. United States*, No. A-10-CA-452-LY, 2011 U.S. Dist. LEXIS 6512, at *3, 2011 WL 221695, at *1 (W.D. Tex. Jan. 24, 2011) (recalling prior orders requiring movant to "identify more clearly which items he was seeking, and which items he was not asking for"). The undersigned does not believe any additional elaboration is necessary given the maximal scope of Defendant's sought-after relief. Still, were Defendant required to describe each seized item sought to be returned, the Court could not end its inquiry on a failure to do so alone. *See United States v. Melquiades*, 394 F. App'x 578, 584 (11th Cir. 2010) (unpublished) (citing *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203–04 (10th Cir. 2001)) (reviewing a Tenth Circuit case which "deemed 'not dispositive of the standing inquiry' the government's concerns [] that the motion inadequately described the purportedly seized items"). While still this is not enough to warrant Defendant's relief, the Third Amended Motion should not be denied on this ground.

Assuming *arguendo* that the material is not inherently contraband or needed as evidence in the potential prosecution Defendant's admitted crimes, and Defendant is able to bring the motion at this stage, the undersigned nevertheless finds the Third Amended Motion devoid of sufficient allegations of ownership. It is settled law that "a bare assertion of ownership in the property, without

more, is not enough to prove an ownership interest sufficient to establish standing." *Arevalo v. United States*, No. 05-110, 2011 U.S. Dist. LEXIS 12311, at *12–13 (E.D. Pa. Feb. 8, 2011). Defendant's Third Amended Motion is indeed lacking any express allegation that he owns the property, let alone any evidence that he has a possessory interest in it. (*See generally* Doc. 38). The most lenient perspective allots to Defendant the implicit assertion that he does own the property identified in the search warrant.[6] (*Id.* at 2). However, establishing ownership requires Defendant to provide more than a mere assertion, which Defendant has unequivocally failed to do. Therefore, on this ground alone, the Court can find that Defendant has not met his burden on the second element of a lawful entitlement to the property and deny the motion outright. Accordingly, the undersigned **RECOMMENDS** that the Third Amended Motion be **DENIED**. (Doc. 38).

      3.   Equitable Jurisdiction Analysis

With the preliminary issues now a distant memory, the undersigned turns to the full equitable jurisdiction analysis. The undersigned holds that the equitable considerations do not weigh in Defendant's favor, even if the items seized by the Government are found to be Defendant's property,

      i.   Callous Disregard for Defendant's Rights

Beginning with the first factor, the undersigned finds that the Government's seizure, to which Defendant agreed, did not evince a "callous disregard" for Defendant's constitutional rights. Defendant grounds his claim of unconstitutional government action in violations of the First and Fourth Amendments to the United States Constitution. (Doc. 38 at 4). The first is that Defendant's First Amendment freedom to exercise his own religion was callously disregarded by the Government's seizure of the 105 articles, as they are "used in traditional religious healing ceremonies." (*Id.*). Next, Defendant asserts the Government violated his Fourth Amendment

---

6. Defendant brings challenges to the validity of the search warrant. (Doc. 38 at 4). To this end, Defendant's motion admits "a Magistrate issued a search warrant based on probable cause," arguing only that probable cause is extinguished due to an alleged violation of the AIRFA. (*Id.*). This contention relates to the alleged violations of Defendant's constitutional right; accordingly, this argument will be discussed below.

protection against unlawful search and seizure because "even though a Magistrate [Judge] issued a search warrant based on probable cause, there was in fact, no probable cause[,] as the items to be seized were protected under 42 U.S.C. § 1996," the American Indian Religious Freedom Act ("AIRFA"). (*Id.*).

The undersigned concludes that the constitutionality *vel non* of the seizures is "far less clear" than Defendant's endless onslaught of amended motions and correspondence filings[7] would suggest. *Angel-Torres v. United States*, 712 F.2d 717, 720 (1st Cir. 1983) (upholding district court's order indicating a lawful seizure in a Federal Rule 41 analysis). Federal Rule 41(g) only permits a party to seek the return of property seized pursuant to an "unlawful search and seizure," not one which was executed in accordance with constitutional principles and protections. *See United States v. Scully*, No. SA:10-CR-00593-DAE(1), 2013 U.S. Dist. LEXIS 92563, at *5, 2013 WL 3338593, at *2 (W.D. Tex. July 2, 2013) (noting a distinction between property "validly seized" and that which is facially contemplated by the text of the rule); *see also* Fed. R. Crim. P. 41(g). A "callous disregard" of a party's rights refers to "a clear and definite showing that constitutional rights have been violated," and requires a party "show a clear deprivation of their constitutional rights." *Koch Foods of Miss., LLC v. United States*, No. 3:19-CV-627-CWR-FKB, 2020 U.S. Dist. LEXIS 14610, at *6, 2020 WL 476380, at *2 (S.D. Miss. Jan. 29, 2020) (citing *Hunsucker v. Phinney*, 497 F.2d 29, 34 n.10 (5th Cir. 1974)); *see also United States v. Huggins*, No. 13-CR-00155, 2013 U.S. Dist. LEXIS 59773, at *14–15, 2013 WL 1728269, at *5 (S.D.N.Y. Mar. 22, 2013) (requiring movant to demonstrate prejudice or "intentional or deliberate disregard" for movant's constitutional rights), *report and recommendation adopted*, No. 13 Cr. 155, 2013 U.S. Dist. LEXIS 186202, 2013 WL 1736466 (S.D.N.Y. Apr. 11, 2013).

---

7. Since the filing of Defendant's original Motion for Return of Seized Property, Defendant has provided the Court with a total of three amended such motions and over a dozen sets of ambiguous letters of correspondence.

Regarding Defendant's First Amendment assertions, the Free Exercise Clause[8] provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I; *see Horvath v. Leander*, 946 F.3d 787, 793 (5th Cir. 2020). The "free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires." *Rubio v. Diaz*, No. SA-08-CV-0942, 2010 U.S. Dist. LEXIS 3776, at *3–4, 2010 WL 183879, at *1 (W.D. Tex. Jan. 15, 2010) (citing *Emp. Div. v. Smith*, 494 U.S. 872, 877 (1990)). This exercise "often involves not only belief and profession but the performance of (or abstention from) physical acts: assembling with others for a worship service, participating in sacramental use of bread and wine, proselytizing, abstaining from certain foods or certain modes of transportation." *Smith*, 494 U.S. at 877. If the Government "sought to ban such acts or abstentions only when they are engaged in for religious reasons, or only because of the religious belief that they display," the action would run afoul of the clause. *Rubio*, 2010 U.S. Dist. LEXIS 3776, at *4, 2010 WL 183879, at *1 (citing *Smith*, 494 U.S. at 877).

To demonstrate a violation of the Free Exercise Clause, an aggrieved party must plead he has a "sincerely held religious belief." *Tap Pilam Coahuiltecan Nation v. Alamo Tr., Inc.*, 489 F. Supp. 3d 611, 622 (W.D. Tex. 2020) (citing *Frazee v. Ill. Dep't of Emp. Sec.*, 489 U.S. 829, 834 (1989)). After making this demonstration, the party must also illustrate the Government's action "substantially burdens that belief." *Patterson v. Def. POW/MIA Acct. Agency*, 398 F. Supp. 3d 102, 121 (W.D. Tex. 2019); *Aguilera v. City of Colorado Springs*, 836 F. App'x 665, 671 (10th Cir. 2020) (unpublished). This burden must be "more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine." *Smith v. Ellis*, No. 3:18-cv-5427-RAJ-TLF, 2021 U.S. Dist. LEXIS 257160, at *29, 2021 WL 8155948, at *10 (W.D. Wash.

---

8. The presentation of the Free Exercise Clause for purposes of alleging a callous disregard for a non-prisoner movant's constitutional rights in a pre-indictment investigative seizure is mostly novel, especially in the Fifth Circuit.

Feb. 24, 2021) (citing *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997)), *report and recommendation adopted*, No. 3:18-cv-05427-TL, 2022 U.S. Dist. LEXIS 75051, 2022 WL 1213441 (W.D. Wash. Apr. 25, 2022). A burden is substantial "if it has a 'coercive effect' on a person's practice of religion." *Buford v. Coahoma Agric. High Sch.*, No. 2:12-CV-00089-DMB-JMV, 2014 U.S. Dist. LEXIS 135459, at *28, 2014 WL 4692753, at *11 (N.D. Miss. July 18, 2014) (quoting *Robinson v. Price*, 615 F.2d 1097, 1099 (5th Cir. 1980)).

If a movant makes this showing, the burden shifts to the Government. "Governmental actions that substantially burden a religious practice must be justified by a compelling state interest and must be narrowly tailored to achieve that interest." *Sampson v. Lauretta*, No. 4:12-cv-3400, 2012 U.S. Dist. LEXIS 162919, at *8, 2012 WL 5503535, at *3 (N.D. Cal. Nov. 13, 2012) (citing *Sherbert v. Verner*, 374 U.S. 398, 402–09 (1963)); *see World Wide St. Preachers Fellowship v. Town of Columbia*, 245 F. App'x 336, 344 (5th Cir. 2007) (unpublished). These principles would prohibit, for example, the Government's unreasonable seizure of a religious headdress or sacramental beverages.

Defendant in this case argues that the herbs, items, and ingredients seized by the Government pursuant to its investigation is such a seizure, preventing him from practicing his "traditional religious ceremonies." (Doc. 38 at 3–4). The Government in its Response does not challenge whether Defendant's rather questionable use of the herbs for medicinal purposes constitutes a religious practice, or whether Defendant sincerely possesses the underlying religious beliefs. (Doc. 78). "The sincerity of a religious belief is not often challenged, so it generally presumed or easily established." *Patterson*, 398 F. Supp. 3d at 121 (citing *Moussazadeh v. Tex. Dep't of Crim. Just.*, 703 F.3d 781, 790–91 (5th Cir. 2012)). Thus, the undersigned presumes this element is satisfied. Defendant must now at least plead that the Government's seizure of the items substantially burdens his religious practice.

It is still hardly conceivable that First Amendment religious protections would extend to the alleged Internet peddling of fake cures during a global pandemic. Defendant's sole hint of a burden is

that, with the items having been seized, he can no longer perform "traditional religious healing ceremonies as part of [his] religion." (Doc. 38 at 4). Without commenting on the veracity of these statements, what is clearly missing from the Third Amended Motion is any allegation that these healing ceremonies are central to Defendant's ambiguous and unidentified[9] religion. (*Id.* at 4). Further, the Third Amended Motion makes no mention of how the Government's obvious interest of protecting the public from pharmaceutical fraud is outweighed by Defendant's exercise of his healing ceremonies. To characterize enforcing mail and wire fraud statutes and protecting the public from Defendant's alleged distribution of fraudulent disease mitigation and treatment products as somehow unduly restricting Defendant's exercise of religion is entirely absurd. Inhibiting Defendant's ability to continue running his illicit operation is, therefore, no First Amendment violation. *See, e.g.*, *Ellis v. City of Chicago*, No. 2000 C 2457, 2000 U.S. Dist. LEXIS 17827, at *23, 2000 WL 1774084, at *7–8 (N.D. Ill. Nov. 30, 2000).

Additionally, as is customary at this point, it should be noted that Defendant *agreed* to the preliminary injunction, and by extension the Court's recognition that the alleged mail and wire fraud poses a threat to the public. (Docs. 15, 16). If Defendant thought his religious beliefs and practices would be impeded by the Government's seizure of the products and his subsequent inability to continue participating in his ceremonies, his agreement to the injunction certainly cuts against his current position. Therefore, the undersigned holds that Defendant has failed to meet his burden of showing the Government's seizure of the 105 items substantially burdens his religious beliefs.

---

9. To which religion Defendant adheres is rather obscure; the Third Amended Motion makes references to "Native Americans" and Defendant titles himself as a "Medicine Man/Shaman." (Doc. 38 at 2, 4). Defendant has elsewhere seemingly described himself as a "Native American" and "Navaho," but he does not plead anywhere that he is a member of a given religion. (Docs. 1 at 8; 3-6 at 1). With this imprecision, Defendant cannot reap the benefits of certain presumptions granted to adherents of Native American religions. *McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 472 (5th Cir. 2014) (observing that "limiting the access that [the movant for return of property], as a sincere adherent to an American Indian religion, has to possession of eagle feathers has a substantial effect on the exercise of his religious beliefs").

Defendant's Fourth Amendment and AIRFA claim fare no better. Seemingly conceding that probable cause as defined solely under the Fourth Amendment was satisfied by the search warrant, Defendant bases his entire argument on the Government's supposed violation of the AIRFA. (Doc. 38 at 4). Defendant states the seized items are "used in traditional religious healing ceremonies by [] Defendant and are thus exempt from seizure as protected objects" under the AIRFA. (*Id.*). Thus, from Defendant's perspective, the AIRFA renders the items invulnerable to seizure, which consequently places the Government's seizure of them outside the scope of probable cause. The Government argues in response that the AIRFA "is a policy statement and does not create a cause of action." (Doc. 78 at 10).

One of the "proper office[s] of a [Federal] Rule 41(g) motion is, . . . before any criminal charges have been filed, to seek the return of property seized without *probable cause*." *United States v. Sims*, 376 F.3d 705, 708 (7th Cir. 2004) (emphasis added). Thus, if probable cause was not established in the initial seizure, courts are generally inclined to grant a movant's Federal Rule 41(g) motion. *In re 624 NE 2nd St.*, No. 3:17-mc-00588-AC, 2019 U.S. Dist. LEXIS 239908, at *28, 2019 WL 13074679, at *9–10 (D. Or. July 16, 2019) (discussing cases), *report and recommendation adopted sub nom. In re 524 NE 2nd St.*, No. 3:18-mc-00588-AC, 2019 U.S. Dist. LEXIS 239906, 2019 WL 13074678 (D. Or. Oct. 4, 2019). While Defendant's AIRFA-based argument appears to be maiden in this context, cases addressing a callous disregard based on an ordinary Fourth Amendment violation are legion. *See, e.g.*, *Account Servs. Corp. v. United States*, No. 09 CV 1495 JM, 2009 U.S. Dist. LEXIS 76531, at *7, 2009 WL 2755649, at *2–3 (S.D. Cal. Aug. 27, 2009); *Wilansky v. United States*, 326 F. Supp. 3d 784, 790–91 (D. Minn. 2018) (considering a Fourth Amendment infringement for seizure lasting an "unreasonable length of time").

Defendant offers no authority supporting the proposition that a violation of the AIRFA by mere writ vanquishes probable cause. The main text of AIRFA as codified provides:

> [I]t shall be the *policy* of the United States to protect and preserve for American Indians
> their inherent right of freedom to believe, express, and exercise the traditional religions
> of the American Indian, Eskimo, Aleut, and Native Hawaiians, including but not
> limited to access to sites, use and possession of sacred objects, and the freedom to
> worship through ceremonials and traditional rites.

42 U.S.C. § 1996 (emphasis added). On its face, the AIRFA is indisputably but a statement of policy.

*See Young v. Smith*, No. 6:17-cv-131, 2018 U.S. Dist. LEXIS 119068, at *20, 2018 WL 3447179, at

*8 (S.D. Ga. July 17, 2018) ("AIRFA . . . enshrines a national policy of preserving Native American

religious practices . . . ."), *report and recommendation adopted*, No. 6:17-cv-131, 2018 U.S. Dist.

LEXIS 144553, 2018 WL 4043193 (S.D. Ga. Aug. 24, 2018). Assuming *arguendo*, that Defendant

sufficiently alleges he is a Native American or otherwise a member of one of the groups enumerated

in the AIRFA, Defendant would have no recourse still, as the "AIRFA does not create a cause of

action or any judicially enforceable rights." *White v. Davis*, No. A-16-CA-059-LY, 2017 U.S. Dist.

LEXIS 120453, at *6, 2017 WL 3274871, at *3 (W.D. Tex. Aug. 1, 2017) (citing *Lyng v. Nw. Indian*

*Cemetery Protective Ass'n*, 485 U.S. 439 (1988)). Because there are no rights established by or

protections offered by the AIRFA, there is no evident connection between any Government action

taken in contravention of the general policy espoused by the AIRFA and the elimination of probable

cause on an otherwise properly issued search warrant. Therefore, the undersigned finds Defendant

has not met his burden of alleging his Fourth Amendment rights were violated.

Accordingly, the undersigned concludes the Government did not act in callous disregard of

Defendant's constitutional rights in seizing the items. This factor weighs towards the Government.

ii.   Defendant's Individual Interest and Need

The second factor also does not bode well for Defendant, as he has not illustrated neither an

individual interest in nor a need for the articles sought to be returned. As alluded to above, Defendant

insists the items seized are "needed to operate his legitimate business venture" and sustain his

"livelihood." (Doc. 38 at 3). This factor is especially "significant, for example, in cases where the

property whose return or suppression is sought: (i) is contraband to which the movant is not legally

22

entitled[] . . . or (ii) consists of items for which the movant has no noteworthy need, such as bet slips or wager tickets." *Richey v. Smith*, 515 F.2d 1239, 1243 n.9 (5th Cir. 1975) (internal citations omitted). Although Defendant need not necessarily demonstrate he "ha[s] an ownership or possessory interest" in the property to satisfy this factor, if the seized property is contraband, Defendant will not be able to establish an individual need in the property. *See Wilansky v. United States*, 326 F. Supp. 3d 784, 794 (D. Minn. 2018) (citing *Mr. Lucky Messenger Serv., Inc. v. United States*, 587 F.2d 15, 17 (7th Cir. 1978)).

The undersigned is not persuaded by Defendant's ominous prophesizing. An "herbal" online drug pharmacy indeed would require the very drugs it sells, and perhaps this generalization applies to Defendant's business. However, as the undersigned has concluded above, the items which Defendant seeks to have returned are contraband, objects utilized in the allegedly fraudulent prophylaxis-and-treatment operation. Defendant's only qualm is that his business—an operation the Court has already found illegal—will continue to be halted as a result of the lack of supply; he has not offered any legitimate, lawful purpose for his products. (*See* Doc. 38). Even if Defendant's undertaking could not operate without these items, it is yet to be shown whether the 105 items are detached from any alleged criminal activity. *In re Merchs. & Marine Bank Accts. X9958 & X1525*, No. 1:19mc371-LG-JCG, 2019 U.S. Dist. LEXIS 129949, at *6, 2019 WL 3558181, at *2 (S.D. Miss. Aug. 4, 2019) (finding no individual interest even after "accept[ing] at face value that [the movant] has a need for the [seized property]"). Thus, Defendant "has not shown an individual interest in or need for return of the retained [property]," weighing against this Court's exercise of equitable jurisdiction. *In re Search of the Residence at 21012 Peckham Rd.*, No. 1:20-MJ-00126-BLW, 2021 U.S. Dist. LEXIS 101895, at *8 (D. Idaho May 18, 2021). Therefore, the undersigned holds Defendant lacks an individual interest in the items seized sufficient to warrant their return. This factor favors the Government as well.

iii.   Defendant's Irreparable Injury

Third, Defendant furthermore has not shown that he will be "irreparably injured by denial" of his Third Amended Motion. Defendant maintains in a conclusory fashion he will "suffer 'irreperable [*sic*] harm' to his ability to make a living in his chosen occupation should the items in the search warrant not be returned to him and has no redress other that petitioning this Court for return of these items." (Doc. 38 at 3). If Defendant's business[10] were indeed a legitimate undertaking, and the items and materials in the Government's possession necessary "to continue its daily business operations," it may very well be true Defendant will suffer irreparable injury. *See, e.g.*, *Koch Foods of Miss., LLC v. United States*, No. 3:19-CV-627-CWR-FKB, 2020 U.S. Dist. LEXIS 34865, at *10–11, 2020 WL 980157, at *4 (S.D. Miss. Feb. 28, 2020).

At Defendant's supposed gourd and "herbal" drug bazaar, Defendant "operate[s a] . . . business venture" which he expects the Court to believe is "legitimate." (*Id.*). Given the Court's aforementioned finding that Defendant's "legitimate business" is in fact a narcotics, eagle feather, and miscellanea emporium, Defendant's presage that his façade of a market rife with illicit activity will fail is precisely the intended consequence of anti-fraud laws. Peter J. Henning, *Maybe It Should Just Be Called Federal Fraud: The Changing Nature of the Mail Fraud Statute*, 36 B.C. L. Rev. 435, 437 (1995) (the mail fraud statute's "original purpose," for example, "was to protect the mails from being used to perpetrate frauds"). In other words, because Defendant's business is, as he himself has admitted in the agreed motion, a stationing ground for unlawful conduct, this Court's intervention against the continuation of his business operations produces no actionable injury. Defendant's illegal and fraudulent activities cannot be sponsored by this Court, even if they are in fact his only current

---

10. Defendant's motion implies that part of the injury he is to suffer is premised upon the Government's alleged continuing violation of his constitutional rights, thereby constituting a per se irreparable injury. (Doc. 38 at 2). To the extent the Third Amended Motion does make this argument, as will be explained below, Defendant's constitutional cries are without merit. *See In re Gov't Seizure of ICX Tokens*, No. 1:21-y-00065-WJM-SKC-1, 2022 U.S. Dist. LEXIS 18113, at *13–14, 2022 WL 292923, at *5 (D. Colo. Jan. 31, 2022).

source of income. The undersigned thus finds Defendant will not suffer any injury by the continued retention of his property. The third factor therefore supports the Government.

iv.   Adequate Remedy at Law

Lastly, the undersigned agrees Defendant has no adequate legal remedy "for the redress of his grievance," here being the return of the allegedly illegal products, ingredients, and their ancillaries. However, that Defendant's only option may be to pursue relief under this Court's § 1331 equitable jurisdiction does not warrant granting whatever relief he seeks. Additionally, as discussed above, Defendant intends to, should his Third Amended Motion be granted, re-engage in the "living" which the Government seeks to inhibit as unlawful mail and wire fraud. (Doc. 38 at 3). There is no recognized right or ability to engage in fraud of the mails and wires. Any dispute Defendant may claim concerning whether his conduct was actually legal is dispelled by the fact that Defendant agreed to the extant preliminary injunction, acknowledging that his conduct may be unlawful and that it is an operation which he cannot continue. (Docs. 15, 16). The undersigned has already determined Defendant is not shielded from the ramifications of improper qualities of his conduct by either the Constitution or the AIRFA. Thus, while the undersigned observes Defendant does not have an adequate remedy at law to re-establish his purportedly fraudulent endeavor, the undersigned holds he has no actionable grievance in this matter. Even if this factor could weigh in favor of Defendant, its countenance would be slight. *See In re Search of the Residence at 21012 Peckham Rd.*, No. 1:20-MJ-00126-BLW, 2021 U.S. Dist. LEXIS 101895, at *5 (D. Idaho May 18, 2021) ("No single factor is determinative.").

In sum, Defendant's contentions do not weigh in favor of granting him equitable relief under § 1331.[11] Therefore, Defendant has failed to meet his burden of establishing the necessity of the

---

11. In the event the Court concludes Defendant has met his burden of demonstrating a lawful entitlement to possession of any of the 105 items, the undersigned would hold the Government has established a legitimate reason to continue its retention. First, the Government has contended and Defendant has not controverted that the items are used in furtherance of the alleged fraudulent scheme. (Docs. 16; 78 at 5). The Court found in its injunction order that

return of his property, or the unconstitutional character of the Government's seizure of the articles concerned. The Court should therefore decline to exercise its § 1331 equitable jurisdiction over the motion. Accordingly, the undersigned **RECOMMENDS** that Defendant's Third Amended Motion be **DENIED**. (Doc. 38).

**B.  Government's Oral Motion for Conversion of Preliminary Injunction**

In its Complaint, the Government requests, in addition to the extant preliminary injunction, a permanent injunction against Defendant, on the same grounds as the preliminary injunction. The Court granted only the Government's joint request for a preliminary injunction, which as noted remains outstanding. (Doc. 16). At a show cause hearing on April 6, 2022 ("April 6 hearing"), the Government made an oral motion to convert the preliminary injunction into a permanent injunction (hereafter, "Oral Motion for Conversion"). (Doc. 71). The Government did not suggest any changes to the content of the provisions of the preliminary injunction; thus, the Oral Motion for Conversion can be said to have substantively identical findings, conclusions, and parameters as those set forth in the existing injunction. *See United States v. Prater*, No. 8:02-cv-2052-T-23MSS, 2005 U.S. Dist. LEXIS 24952, at \*5–6 (M.D. Fla. Aug. 30, 2005) (granting a motion for conversion of a preliminary injunction wherein the "findings of fact [between the two injunctions] are nearly identical"), *report and recommendation adopted*, No. 8:02-cv-2052-T-23MSS, 2005 U.S. Dist. LEXIS 41226, 2005 WL 2715401 (M.D. Fla. Sept. 23, 2005). Defendant received notice of the hearing and was ordered to so appear. (Docs. 60, 62). Yet, he made no appearance at the April 6 hearing and has not produced any

---

"permitting Defendant to continue to perpetrate the alleged mail and wire fraud would constitute irreparable harm and that the balance of the equities and the public interest weigh in favor of injunctive relief," and that Defendant must be prohibited from engaging in his disease-related business activities. (Doc. 16 at 2–3). The threat of a continued fraud is plentifully legitimate a reason for the Government to retain the items until its investigation closes. Defendant's agreement to the injunction implies Defendant recognized this reality as well. (Docs. 15; 15-1 at 2).

response to the Oral Motion for Conversion. (Doc. 71). The Oral Motion for Conversion is therefore

unopposed.[12]

Authority for a permanent injunction against mail and wire fraud lies in 18 U.S.C. § 1345.

Because an indictment has not been returned against Defendant, the Federal Rules of Civil Procedure

govern the injunction proceedings. 18 U.S.C. § 1345(b). Ordinarily, a permanent injunction[13]

requires the movant to establish the following equitable factors:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as
> monetary damages, are inadequate to compensate for that injury; (3) that, considering
> the balance of hardships between the plaintiff and defendant, a remedy in equity is
> warranted; and (4) that the public interest would not be disserved by a permanent
> injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). In considering whether to convert a

preliminary injunction into a permanent injunction, courts must "recast its findings in terms of the

legal standard applicable to a permanent injunction." *CIBA-Geigy Corp. v. Bolar Pharm. Co.*, 747

F.2d 844, 847 (3d Cir. 1984). "The standard for a preliminary injunction is essentially the same as for

a permanent injunction with the exception that the plaintiff must show a likelihood of success on the

merits rather than actual success." *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12

(1987). The general permanent injunction factors apply in § 1345 actions, including those

proceedings in which the Government seeks to convert a preliminary injunction into a permanent

injunction. *See United States v. Dinh*, No. 8:20-cv-1794-KKM-AAS, 2021 U.S. Dist. LEXIS 236993,

---

12. Although the Court likely would be able to grant the Oral Motion for Conversion outright given its unopposed
status, *see* Local Rule CV-7(d), interests of thoroughness prompt the undersigned to engage in the typical permanent
injunction analysis. *But see United States v. Doe*, No. 1:18-cv-22016-GAYLES/OTAZO-REYES, 2019 U.S. Dist.
LEXIS 27989 (S.D. Fla. Jan. 29, 2019) (granting motion in face of default without substantive analysis).
13. Although generally an evidentiary hearing is required, "where there is no triable issue of fact, the court may
convert a preliminary injunction to a permanent injunction without an evidentiary hearing." *United States v. Prater*,
No. 8:02-cv-2052-T-23MSS, 2005 U.S. Dist. LEXIS 24952, at *8 (M.D. Fla. Aug. 30, 2005) (citing *United States v.
McGee*, 714 F.2d 607, 613 (6th Cir. 1983)), *report and recommendation adopted*, No. 8:02-cv-2052-T-23MSS,
2005 U.S. Dist. LEXIS 41226, 2005 WL 2715401 (M.D. Fla. Sept. 23, 2005). The undersigned believes that,
because of Defendant's acquiescence in these proceedings, there is no triable issue of fact as to whether his alleged
conduct warrants an injunction. Nevertheless, the undersigned will engage in a complete analysis in equity to cover
all bases.

at *19–23, 2021 WL 5867441, at *6–8 (M.D. Fla. Dec. 10, 2021). In this case, the undersigned believes the Government is entitled to a permanent injunction.

The statutory requirements, an alternative to the typical equitable analysis, for an ordinary permanent injunction sought by the Government absent an existing preliminary injunction under § 1345 differ slightly, and are as follows: (1) Defendant was "violating or about to violate" §§ 1341 or 1343, and (2) a permanent injunction is "warranted to prevent a continuing and substantial injury to the United States or to any person or class of persons for whose protection the action is brought." 18 U.S.C. § 1345(a)–(b); *see also United States v. Quadro Corp.*, 928 F. Supp. 688, 695 (E.D. Tex. 1996). As an initial matter, the Court has already found satisfactory the Government's unopposed contention that Defendant "is violating and, unless enjoined, will continue to violate 18 U.S.C. §§ 1341 and 1343." (Doc. 16 at 1). With Defendant having not opposed the Oral Motion for Conversion at the April 6 hearing, and his declared intent to continue engaging in the enjoined conduct prohibited in the preliminary injunction, the undersigned holds the Court's prior findings that "Defendant . . . unless enjoined, will continue to violate 18 U.S.C. §§ 1341 and 1343," should be adopted again here. (Doc. 16). Thus, in light of Defendant's failure to defend either his motion or the Government's motion, and his agreement to the preliminary injunction, there is no need to make a detailed finding as to each of the elements of wire fraud and mail fraud.[14]

Lastly, Defendant's intent to re-engage in the sale and distribution of the allegedly fraudulent items creates an extraordinary need to prevent any further continuing or substantial injuries to American citizens. "[S]o long as the statutory conditions are met, irreparable harm to the public is presumed," a revelation unlike that in "almost all common law injunction determinations." *Quadro*

---

14. In the agreed preliminary injunction, as to alleged violations of §§ 1341 and 1343, Defendant was sure to exclaim he "d[id] not admit to such, however, solely for purposes of [the] Agreed Preliminary Injunction, Defendant does not contest this issue." (Doc. 16 at 1). At this stage, since Defendant refused to appear at the April 6 hearing to contest the Oral Motion for Conversion, as to the existence of probable cause, the Government's claims are also undisputed.

*Corp.*, 928 F. Supp. at 697. Therefore, both statutory requirements for a permanent § 1345 injunction have been met.

Although the undersigned finds the statutory requirements for a permanent injunction by the Government have been met, and the Court already made initial findings in issuing its preliminary injunction, which remains outstanding at the time of release of this Report and Recommendation, the equitable factors may also be considered. *See Dinh*, 2021 U.S. Dist. LEXIS 236993, at *19 n.4, 2021 WL 5867441, at *6 n.4; *see also United States v. Strother*, No. 1:16-CV-00007, 2016 U.S. Dist. LEXIS 181202, at *16–17, 2016 WL 7664303, at *5–6 (E.D. Tex. Dec. 7, 2016) (applying the four *eBay* factors in analyzing a motion for permanent injunction under § 1345, even in the absence of an existing injunction), *report and recommendation adopted*, No. 1:16-CV-7, 2017 U.S. Dist. LEXIS 1841, 2017 WL 67864 (E.D. Tex. Jan. 6, 2017).

As to the equitable elements, first, the Government has demonstrated both that it suffered irreparable injury. There is clear harm in the unfettered fraudulent distribution and sale of illicit goods via the mails and wires. (*See* Doc. 16 at 2). These injuries are specifically done to the American people, and these injuries are attributable to the Government as well. *See Dinh*, 2021 U.S. Dist. LEXIS 236993, at *19, 2021 WL 5867441, at *6 (citing *Alfred L. Snapp & Son v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982)); 18 U.S.C. § 1345 (authorizing injunction for "injury to the United States or to any person or class of persons for whose protection the action is brought"). As the Government alleges, victims "suffer financial losses from the mail and wire fraud scheme." (Doc. 1 at 9). The Court so agreed in its earlier order, and found "permitting Defendant to continue to perpetrate the alleged mail and wire fraud would constitute irreparable harm and that the balance of the equities and the public interest weigh in favor of injunctive relief." (Doc. 16 at 2). Defendant has not provided reason to believe this harm will no longer occur, and his promises of an intent to "continue his business"—the operation of which was suspended in the preliminary injunction due to

the threat of harm to the public—serve as an omen of but a bandaged wound for the American people, ready to be reopened should Defendant receive his relief.

Second, no legal remedy would be sufficient to combat and eradicate the threat posed by Defendant's purported unlawful business. Defendant as noted intends by his own admission to continue engaging in the enjoined conduct, the same conduct the Court has already found likely to be unlawful. Specifically, Defendant's Third Amended Motion signifies his intent to "make a living" by the supposed criminal provision of contraband should his property be returned. (Doc. 38 at 3). It is clear here that Defendant, in the pursuit of his "living" and desire to propagate his religious ceremonies, will not be dissuaded by simple monetary judgments against him, some of which may very well range in amounts less than the cost of filing and prosecuting a lawsuit in this Court. (*See* Doc. 4-2) (Defendant's alleged website listing products costing $35–45); *see also* Fee Schedule, U.S. District Court – Western District of Texas, https://www.txwd.uscourts.gov/court-information/fee-schedule/ (last visited June 29, 2022) (cost to produce electronic record $31.00; pro hac vice fee $100.00); *Dinh*, 2021 U.S. Dist. LEXIS 236993, at *20, 2021 WL 5867441, at *7 (acknowledging "even if [the] victims knew who defrauded them, it is unlikely many of them suffered enough damage to justify expending legal fees and costs to bring individual suits against [the] defendants.").

Thus, and thirdly, the American people deserve to be protected from the spurious promises posed by Defendant, and Defendant's determination can seemingly only be terminated by an injunction. Defendant will suffer no conceivable legitimate hardship from an injunction prohibiting purported unlawful frauds on American citizens. If the enjoined business is indeed his only occupation, the notion that he has a right to operate an apparently fraudulent undertaking is nothing short of preposterous. Lastly, the "public interest would be served by preventing further acts of fraud upon residents of the United States," especially during such crucial, trying times as these where disease outbreaks and epidemics are on the minds of many Americans. *Dinh*, 2021 U.S. Dist. LEXIS 236993, at *21, 2021 WL 5867441, at *7.

Defendant's Third Amended Motion signifies Defendant's intent to "make a living" by the criminal provision of contraband should his property be returned following his motion. (Doc. 38 at 3). Recognizing this perennial threat, Defendant's agreement in the preliminary injunction, and Defendant's failure to appear at various hearings, the undersigned believes a permanent injunction is necessary at this stage. Therefore, the undersigned **RECOMMENDS** that the Government's Oral Motion for Conversion be **GRANTED**. The undersigned also **RECOMMENDS** that the Government's outstanding preliminary injunction be converted into a permanent injunction on the same grounds. All necessary syntactical changes to the extant preliminary injunction (Doc. 16) should be made. *See Prater*, 2005 U.S. Dist. LEXIS 24952, at \*5–6 (enumerating certain applicable changes).

## IV. CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that Defendant's Third Amended Motion be **DENIED**. (Doc. 38).

Further, the undersigned **RECOMMENDS** that the Government's Oral Motion for Conversion be **GRANTED**. (Doc. 71). The undersigned accordingly **RECOMMENDS** that the Government's outstanding preliminary injunction be converted into a permanent injunction on the same grounds.

SIGNED this 5th day of July, 2022.


DAVID B. FANNIN
UNITED STATES MAGISTRATE JUDGE

31

**INSTRUCTIONS FOR SERVICE AND RIGHT TO APPEAL/OBJECT**

In the event that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested. Pursuant to 28 U.S.C. § 636(b), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Judge. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the U.S. Magistrate Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).